UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

LE BOOK PUBLISHING, INC.,

Plaintiff,

-against-

BLACK BOOK PHOTOGRAPHY, INC., and
DAG MEDIA, INC.,

Defendants.

-------------------------------------------------------------------X

Index No.

**JUDGE LYNCH**

**04 CV 10270**

**COMPLAINT**
JURY TRIAL DEMANDED

RECEIVED
DEC 28 2004
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, LE BOOK PUBLISHING, INC., by its attorneys, DOWD & MAROTTA, LLC

complaining of the Defendants, alleges as follows:

### NATURE OF ACTION

1.      This is an action for copyright infringement under the Copyright Act of 1976, 17

U.S.C. § 101 et seq. (1994), and trademark infringement under the Trademark Act of 1946, as

amended (The Lanham Act, 15 U.S.C. § 1051 *et seq.*), based on the Defendant's adoption and

use of "Black Book" as a confusingly similar brand name in violation of Plaintiff's established

rights in "Le Book" as a registered trademark for Plaintiff's highly-specialized compilation of

information on professionals, supplies and facilities in the creative arts, fashion, advertising and

visual communications media industries.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and

28 U.S.C. § 1331. This action involves claims of copyright infringement arising under the

Copyright Act of 1976, 17 U.S.C. § 101 et seq. (1994).

3.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Federal Trademark Act), 28 U.S.C. 1338(a) (acts of Congress relating to trademarks). Venue is proper in this District pursuant to 28 U.S.C. 1391(b) and (c).

4.     Defendants are subject to personal jurisdiction in this State because Defendants are domestic corporations created by or under the laws of New York State, pursuant to New York Civil Practice Law and Rules § 105(h).  This Court also has personal jurisdiction over the Defendant because the claims against them arise out of the tortious acts alleged herein occurred in the State of New York.

5.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action arose within this Judicial District.  In the alternative, Plaintiff relies on 28 U.S.C. §§ 1391(b)(3) and 1391(c) because Defendants reside in this Judicial District and are subject to personal jurisdiction in this Judicial District.

## PARTIES

6.     Plaintiff, LE BOOK PUBLISHING, INC., is a New York corporation doing business at 552 Broadway, in the Borough of Manhattan, County of New York, City and State of New York.

7.     Upon information and belief, that at all times hereinafter mentioned, the Defendant BLACK BOOK PHOTOGRAPHY, INC. (hereinafter "BLACK BOOK PHOTOGRAPHY") is a corporation  with its principal place of business in the City, State and County of New York.  See **Exhibit 1** annexed hereto, New York State Department of State Entity Information.

8.      Upon information and belief, Defendant DAG MEDIA, INC. (hereinafter "DAG

MEDIA") is the owner and publisher of ""The Black Book" - THE CREATIVE BLACK INDUSTRY BOOK DIRECTORY" (hereinafter referred to as, "The Black Book").

9.     Upon information and belief, Defendant DAG MEDIA is a New York corporation with its principal place of business located at 125-10 Queens Boulevard, Suite 14, Kew Gardens, New York.  <u>See</u> **Exhibit 2** annexed hereto, New York State Department of State Entity Information.

10.     Upon information and belief, Defendant BLACK BOOK PHOTOGRAPHY is a publishing company that owns and publishes "The Black Book".

11.     Upon information and belief, Defendant BLACK BOOK PHOTOGRAPHY distributes "The Black Book" to various creative individuals in the fashion, photography, modeling, film, music, television and other visual production fields.

**OCCURRENCES**

12.     Plaintiff LE BOOK PUBLISHING, INC., produces the paramount resource for the fashion, advertising and visual production industries.

<u>"Le Book" Directory</u>

13.     "Le Book" is a complete reference of more than 35,000 professional photographers, art directors, fashion stylists, hair stylists, makeup artists, model agencies, rental services, magazines, record labels, film and video production companies, PR firms, fashion designers, cosmetic companies, and advertising agencies.  <u>See</u> Declaration of Alex Orlowski ("Orlowski Decl.") at ¶ 2.

14.     "Le Book" contains 800 pages of visual images and listings that have been carefully selected for use by professionals in the photography and fashion world.  <u>Id</u> at ¶ 3.

15.     Le Book has published annual editions of its sourcebook in the United States for approximately 10 (ten) years. Id at ¶ 4.

16.     Le Book was created for use as a reference guide or work tool for various creative artists in the fashion, photography and visual production industry.  Id at ¶ 5.

"Le Book" Is a Paramount and Original Resource

17.     Plaintiff created "Le Book" in order for its use as a reference guide or work tool for various creative artists in the fashion, photography and visual production industry.  Id at ¶15.

18.     Le Book was one of the first publications to combine photography and production elements by including production contacts, as well as photography contacts, within its guide.  Id at ¶ 6.

18.     Plaintiff's product is unique not only with regard to its content, but with regard to the actual physical form of the directory itself.  Id at ¶ 17.

19.     Plaintiff utilizes only the best products in creating its directory, including high gloss photographs and paper of a heavy, durable weight. Id at ¶ 18.

Plaintiff's Copyright in "Le Book"

20.     On September 23, 2004 the United States Copyright Office registered to Plaintiff the copyright for the publication "Le Book" - New York 2003 ("The Copyrighted Work").  See Copyright Registration Certificate dated September 23, 2004, attached hereto as **Exhibit 3**.

21.     The Copyrighted Work was published in the United States in December of 2002.

22.     In order to compile its list of carefully selected creative individuals and entities,

Plaintiff employs a staff of approximately five (5) people who research, select and collect a vast amount of information eventually included in The Copyrighted Work. See Orlowski Decl. at ¶ 7.

Seed Names and Addresses Appear in the Copyrighted Work to Prevent Unauthorized Copying

23.     Included in The Copyrighted Work were several mock company names (referred to as "seeds") and addresses, which were included in LeBook's directory specifically for the purpose of discovering unauthorized copying.   See Declaration of Alex Orlowski at ¶ 19.

24.     The content of the seed names and addresses were created by Plaintiff's employees, and were designed to replicate the initials of Plaintiff's name, "LB".  Furthermore, the address and telephone number included in the seed addresses were of Plaintiff's New York offices - 522 Broadway, 6th Floor, New York, NY 10012.  Id at ¶ 20.

25.     Plaintiff included the following seed names and addresses in The Copyrighted Work:

> LB/Lost Boy Records
> 552 Broadway 6th Fl. New York, NY
> 212-941-4148
> Fax: 212-941-4150
>
> Look Book
> 552 Broadway 6th Fl. New York, NY
> 212-941-4148

See Orlowski Decl. at **Exhibit A**.

26.     In reviewing the recent edition of Defendant's publication, "The Black Book", Plaintiff found that "The Black Book" did indeed directly copy Plaintiff's two seed addresses listed above.  See Orlowski Decl. at ¶ 20; see also Orlowski Decl. at **Exhibit B**, excerpt from "The Black Book" listing Plaintiff's seeds.

<u>"The Black Book" Is a Cheap Imitation of "Le Book" and Has Caused Confusion Within the Industry</u>

27.     Upon information and belief, "The Black Book" formerly only included photography listings.  <u>See</u> Declaration of Alex Orlowski at ¶ 21.

28.     The 2004 edition of "The Black Book" containing Plaintiff's seeds was the first edition that combined photography and production elements to include an all-inclusive contact listing of contacts in all of those industries.  <u>Id</u> at ¶ 22.

29.     Furthermore, the edition of "The Black Book" containing Plaintiff's seeds was the first edition to compile its listings in categories very similar to those in The Copyrighted Work. Examples of such categories include: Hair, Makeup, Stylists, Photo Production, Rentals, Model Agencies, Casting Directors, Caterers, Costume Designers, DJ's, etc.  <u>Id</u> at ¶ 23.

30.     Indeed, "The Black Book" is a cheap imitation of Plaintiff's Copyrighted Work. The advertisements included in "The Black Book" are of inferior quality, and the directory itself is cheaply made with lower-grade resources. <u>Id</u> at ¶ 24.

31.     Advertising rates charged by "Le Book" range from $4,000 to $5,000 per directory page. <u>Id</u> at ¶ 25.

32.     Upon information and belief, "The Black Book" charges advertising rates of $500 per page.  <u>Id</u> at ¶ 25.

33.     These disparate rates have caused unfair competition in the market place. <u>Id</u> at ¶ 26.

34.     Furthermore, the creation of the strikingly similar Infringing Work, "The Black Book" has caused confusion among industry creatives, including Plaintiffs' clients.  <u>Id</u> at ¶ 27.

<u>The Black Book's 2004 Edition Directly Copies Plaintiff's 2003 New York Edition</u>

35.     Other than the copying of seed addresses as outlined above, Defendant has engaged in the copying of the Copyrighted Work.  Id at ¶ 28.

36.     Instances of direct copying of Plaintiff's 2003 New York edition appear in the 2004 edition of The Black Book.  Id at ¶ 28.

Attorneys Section

37.     For example, in its Attorney section, Plaintiff's 2003 New York edition includes only those facsimile numbers for firms which advertise in Le Book.  See Orlowski Decl. at ¶ 29; see also Orlowski Decl. at **Exhibit C**, pages 765 through 769 from Plaintiff's Attorney section which includes facsimile numbers.

38.     The two law firms which advertise in Le Book are Eric M. Bland, Esq. and Dowd & Marotta LLC.  Therefore, Plaintiff's 2003 New York edition includes facsimile numbers for only those two listings. See Orlowski Decl. at ¶ 29.

39.     In its respective Attorney section, The Black Book's 2004 edition has also included the very same facsimile numbers listed in Le Book - Eric M. Bland, Esq. and Dowd & Marotta LLC.  See Orlowski Decl. at ¶ 30; see also Orlowski Decl. at **Exhibit D**, pages 479-480 from The Black Book's Attorney section.

40.     Black Book has failed to include any other facsimile numbers other than those listed in Le Book. See Orlowski Decl. at ¶ 30.

41.     Indeed, Defendant never contacted this office (Dowd & Marotta LLC) to confirm that our contact information included in the Dowd & Marotta listing in The Black Book is correct.

French Listings

42. A further example of The Black Book's direct copying relates to the inclusion of several French companies listed in The Black Book's 2004 edition. See Orlowski Decl. at ¶ 31.

43. Plaintiff's 2003 New York edition includes certain French companies which expressed a desire to have their listing appear in the New York edition of Le Book. Id at ¶ 32.

44. Indeed, in Plaintiff's 2003 New York edition, the "Retouchers & Digital Imaging" section includes a listing for the French photography lab, Picto. Id at ¶ 32. See also Orlowski Decl. at **Exhibit E**, page 271 of Plaintiff's 2003 New York edition, including various addresses for Picto photo labs.

45. The only French listings which appear in The Black Book's 2004 edition are those which were included in Plaintiff's 2003 New York edition. See Orlowski Decl. at ¶ 33.

46. In fact, The Black Book directly copied all of the various listings for Picto photography labs. See Orlowski Decl. at ¶ 33; see also Orlowski Decl. at **Exhibit F**, page 91 of The Black Book, listing the various addresses for Picto.

Freelance Art Buyers/Consultants Section

47. A further example of The Black Book's direct copying appears in the "Freelance Art Buyers/Consultants" section. See Orlowski Decl. at ¶ 34.

48. Plaintiff's 2003 New York edition included email addresses and facsimile number for four (4) listings under this section. Id; see also Orlowski Decl. at **Exhibit G**, Plaintiff's 2003 New York edition "Freelance Art Buyers/Consultants" section.

49. These listings include: Roark Dunn & Associates, Jamila El Glaoui/JMG Production, Juliette Menager/Joule Studio and Susan Shaughnessy/SKS Productions. See Orlowski Decl. at ¶ 34.

50.     Indeed, The Black Book 2004 edition's "Art Buyers/Consultants" includes facsimile numbers and email addresses only for those four (4) listings that appear in Plaintiff's 2003 New York edition.  Id at ¶34; see also Orlowski Decl. at **Exhibit H,** The Black Book's 2004 edition "Art Buyers/Consultants" section.

51.     Furthermore, Plaintiff's 2003 New York edition "Freelance Art Buyers/Consultants" section includes a listing for JMG Productions.  See Orlowski Decl. at ¶ 36; see also Orlowski Decl. at **Exhibit G** at page 242.

52.     JMG Productions ("JMG") is headed by Jamila El Glaoui, who is a close, personal friend of Plaintiff's publisher, Veronique Kolasa. See Orlowski Decl. at ¶ 37.

53.     Indeed, Ms. Glaoui does not advertise or publish her company's contact information as a "freelance art buyer" or "consultant" with any other publication.  Ms. Glaoui provided JMG's information directly to Plaintiff, including two (2) telephone numbers, an email address and facsimile number. Id at ¶ 38.

54.     JMG's listing appeared in The Black Book's 2004 edition, though The Black Book had no way of obtaining Ms. Glaoui's information other than by copying it directly from Plaintiff's 2003 New York edition. See Orlowski Decl. at ¶ 39; see also Orlowski Decl. at **Exhibit H**.

Hair, Makeup, Manicurist and Stylist Representatives Section

55.     The "Stylist Reps" section of The Black Book's 2004 edition is a direct copy of the entire "Hair, Makeup, Manicurist and Stylist Representatives" section of Plaintiff's 2003 New York edition.  See Orlowski Decl. at ¶ 40; see also Orlowski Decl. at **Exhibit I**, The Black Book's 2004 edition, "Stylist Reps" section; see also Orlowski Decl. at **Exhibit J,** Plaintiff's

2003 New York edition, "Hair, Makeup, Manicurist and Stylist Representatives" section.

56.     Again, as in the other sections delineated above, The Black Book only includes facsimile numbers and email addresses for those stylist representatives whose information was included in Plaintiff's 2003 New York edition.  See Orlowski Decl. at ¶ 40.

"Paris Office"

57.     In several instances of direct copying from Plaintiff's 2003 New York edition, The Black Book made several large errors as its staff did not understand the substance of what they were copying.  Id at ¶ 41.

58.     For example, in Plaintiff's 2003 New York edition "Hair, Makeup, Manicurist and Stylist Representatives" section, Le Book included two (2) particular listings with more than one (1) address.  Id at ¶ 42.

59.     "M.A.O./Management + Artists + Organization" ("M.A.O.") appears in the Representatives section of Plaintiff's 2003 New York edition.  See Orlowski Decl. at **Exhibit J** at page 26.

60.     This listing includes contact information for both M.A.O's New York and Paris office, with staff names, telephone numbers and email addresses.  Id.

61.     Indeed, M.A.O's Paris office is listed beneath M.A.O.'s New York contact information, and is delineated as "Paris Office."  The address appears as "91, rue de Turenne - 750003 PARIS", with an email address of "daniela@managementartists.fr".  Id.

62.     The Black Book, in misunderstanding the fact that "Paris Office" referred to M.A.O.'s French office, listed "Paris Office" as a separate entity or company under its "Stylist Reps" section.  See Orlowski Decl. at ¶ 44; see also Orlowski Decl. at **Exhibit I** at page 261,

The Black Book's 2004 edition's "Stylist Reps" section.

63.     Indeed, the information included in The Black Book's "Paris Office" company listing is the very same contact information for M.A.O.'s Paris, France office.  See Orlowski Decl. at ¶ 45.

64.     This very same error occurs with respect to another listing in Plaintiff's 2003 New York edition.  See Orlowski Decl. at ¶ 46.

65.     "Walter Schupfer Management" appears as a listing in the same "Hair, Make-up, Manicurist & Stylist Representatives" section discussed above.  See Orlowski Decl. at **Exhibit J** at page 29.

66.     Both Walter Schupfer Management's New York and Paris Offices are listed under the company listing in Plaintiff's 2003 New York edition.  See Orlowski Decl. at ¶ 47; see also Orlowski Decl. at **Exhibit J** at page 29.

67.     Walter Schupfer Management's Paris Office address is listed as "109, bd Beaumarchais - 75003 PARIS".  Id.

68.     An email address of "mail@wschupfer.com" also appears under the Schupfer listing, along with telephone and facsimile numbers.   Id.

69.     The very same contact information appears in The Black Book's 2004 edition under "Stylist Reps".  See Orlowski Decl. at **Exhibit J** at page 261.

70.     However, The Black Book lists Walter Schupfer Management's Paris Office information as a separate company listing, entitled "Paris Office".  Id.

Food Stylists Section

71.     In its Food Stylist section, Plaintiff's 2003 New York edition includes a listing for Donna Hall.  See Orlowski Decl. at **Exhibit K,** Plaintiff's 2003 New York edition, "Food

Stylists" section, at page 121.

72.     Donna Hall, a chef, is a friend of a Le Book employee, Stacy Moore.
<u>See</u> Orlowski Decl. at ¶ 50.

73.     As a favor to Donna Hall, Ms. Moore included Donna Hall's information under Plaintiff's "Food Stylist" section in the 2003 New York edition.  <u>Id</u> at ¶ 51.

74.     Ms. Hall was never truly a food stylist, but permitted Ms. Moore to include her information in Le Book on the off-chance that the listing might lead to some work.  <u>Id</u> at ¶ 51.

75.     Ms. Hall's information never appeared in any other publication or compilation relating to food styling.  <u>Id</u> at ¶ 51.

76.     In the latter part of 2003, Donna Hall relocated to Mexico.  <u>Id</u> at ¶ 52.

77.     She was no longer included in any later editions of Plaintiff's sourcebook.  <u>Id</u> at ¶ 52.

78.     The Black Book, however, included Donna Hall's listing in its 2004 edition.
<u>See</u> Orlowski Decl. at **Exhibit L**, page 281 of The Black Book's 2004 edition.

79.     Clearly, The Black Book copied this information directly from Plaintiff's 2003 New York edition, as there was no other way of The Black Book obtaining Ms. Hall's information.  <u>See</u> Orlowski Decl. at ¶ 54.

<u>The Black Book's Unauthorized and Direct Copying of Le Book</u>

80.     Plaintiff's 2003 edition was first published in the United States in December of 2002.  <u>Id</u> at ¶ 55.

81.     Upon information and belief, The Black Book's 2004 edition was released in the spring of 2004.  <u>Id</u> at ¶ 55.

82.     Clearly, it was possible for Defendants to copy Plaintiff's copyrighted work as the Le Book 2003 New York edition was available to them.  <u>Id</u> at ¶ 55.

83.     Indeed, Defendants are utilizing Plaintiff's carefully-compiled, thoroughly researched information by extracting and copying the information directly from Plaintiff's directory. <u>Id</u> at ¶ 56.

84.     Le Book was created for distribution to well known and respected creative individuals and entities so that they could then, in turn, find and select collaborative partners of the same caliber. <u>Id</u> at ¶ 57.

85.     Plaintiff's clients expect to find only the very best creative individuals and entities  listed within its guide.  <u>Id</u> at ¶ 58.

86.     Le Book has garnered significant press attention due to its reputation within the creative fashion, photography and visual production industries.  <u>See</u> **Exhibit 4** annexed hereto, press clippings.

87.     The Black Book's copying of Plaintiff's thoroughly researched, carefully compiled listings is patently unfair.  <u>Id</u> at ¶ 60.

88.     An inordinate amount of time, money and effort was spent compiling Plaintiff's extensive list of creative, fashion, photography and visual production contacts, and any copying of such information would therefore alleviate the need to perform any of this time consuming work. <u>Id</u> at ¶ 61.

89.     The Black Book's copying of Plaintiff's directory would cause irreparable harm to Plaintiff's business, as Le Book expends a great deal of time and money in compiling its list and The Black Book has obtained the same information for free.  <u>Id</u> at ¶ 62.

<u>The Creation of "Le Book" Requires Significant Time, Effort, Labor, Money and Resources</u>

90.     Plaintiff has spent a great deal of effort in researching and acquiring reliable contacts within the industry.  <u>Id</u> at ¶ 8.

91.     Plaintiff employs an intense process of research in order to track down creative individuals and companies to verify that the information printed is accurate.  <u>Id</u> at ¶ 9.

92.     This process is often very time consuming due to the fact that many professionals in the aforementioned creative industries travel a great deal and require constant follow-up.  <u>Id</u> at ¶ 10.

93.     Therefore, a single listing in The Copyrighted Work may require a combination of five to ten telephone calls, emails or faxes.  <u>Id</u> at ¶ 11.

94.     The Copyrighted Work has significant value as the listings included by Plaintiff are screened by Plaintiff's staff to include only the most respected, sought-after contacts in the industry.  <u>Id</u> at ¶ 12.

95.     The Copyrighted Work, therefore, is very reliable.  <u>Id</u> at ¶ 13.

<u>Plaintiff's Reputation in the Fashion, Photography and Visual Production Industry is Unparalleled</u>

96.     Plaintiff has invested heavily in the promotion and quality of the Copyrighted Work.  <u>Id</u> at ¶ 14.

97.     Plaintiff's reputation has been built on the validity and quality of the research performed in order to acquire the information compiled in The Copyrighted Work.  <u>Id</u> at ¶ 16.

98.     Defendant's work ("The Infringing Work") is strikingly similar to the Copyrighted Work.

99.     The Infringing Work is substantially similar to Copyrighted Work.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR COPYRIGHT INFRINGEMENT

100.     Plaintiff repleads and realleges each and every allegation of paragraphs "1"

through "99" inclusive, with the same force and effect as if specifically pleaded herein.

101.     Plaintiff is the current owner of a valid registered copyright in the publication "Le

Book" - New York 2003.  See Copyright Registration attached hereto as **Exhibit 3**.

102.     Plaintiff is the sole proprietor of all rights, title and interest in and to the copyright

of The Copyrighted Work entitled "Le Book - New York 2003" registered with the United States

Office of Copyright pursuant to 17 U.S.C. 411(a).  Id.

103.     The compilation included within The Copyrighted Work is materially wholly

original with Plaintiff and are copyrightable subject matter under the laws of the United States.

104.     Defendants THE BLACK BOOK and DAG MEDIA copied the Copyrighted

Work.

105.     Plaintiff did not authorize the copying, reproduction, distribution, performance or

derivative uses of the Copyrighted Work.

106.     Defendants THE BLACK BOOK and DAG MEDIA had access to the

Copyrighted Work.

107.     The Copyrighted Work and the Infringing Work are strikingly similar.

108.     The Copyrighted Work and the Infringing Work are substantially similar.

109.     An average lay observer would recognize the "The Black Book" as having been

appropriated from the Copyrighted Work.

110.     Defendants BLACK BOOK PHOTOGRAPHY and DAG MEDIA infringed

15

Plaintiff's copyright, in violation of the Copyright Act, 17 U.S.C. §101 et seq., by knowingly and willfully copying The Copyrighted Work without the consent or authorization of Plaintiff.

111. By reason of the foregoing, Defendants are liable to Plaintiff for copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101 et seq., for actual and statutory damages in an amount to be determined but not less than FIVE HUNDRED THOUSAND DOLLARS $500,000.00) for violation of Plaintiff's exclusive rights of reproduction, distribution, performance and preparation of derivative works under 17 U.S.C. §106.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR TRADEMARK INFRINGEMENT

112. Plaintiff repleads and realleges each and every allegation of paragraphs "1" through "111" inclusive, with the same force and effect as if specifically pleaded herein.

113. Plaintiff is the owner of United States Trademark Registration No. 74707010, registered on March 11, 1997, for "Le Book", a copy of which is attached hereto as Exhibit D. This registration is valid.

114. Continuously since on or about July 27, 1995, Plaintiff has used its mark in connection with and to identify its printed directory featuring information on professionals, supplies and facilities in the creative arts, fashion, advertising, and visual communications media industries. The mark has been used to distinguish "Le Book" from similar products offered by other companies, by, and without limitation, prominently displaying said mark on the "Le Book" directory and advertising and promotional materials distributed throughout the United States. Plaintiff's products sold under the "Le Book" mark and brand name are provided nationwide including in the State of New York.

16

115.    Defendant has infringed Plaintiff's mark in interstate commerce by various acts, including, without limitation, the selling, offering for sale, promotion and advertising a confusingly similar directory under the name "Black Book" of a type virtually identical to the type of directory offered by Plaintiff, the registration of the domain name "Black Book" and the operation of a Internet Web site, prominently displaying, advertising, and promoting Defendants' directory under the infringing "Black Book" mark.

116.    Defendant's use of "Black Book" in connection with its directory is without permission or authority of the Plaintiff and said use is likely to cause confusion, to cause mistake and/or to deceive.

117.    Defendant's use of the "Black Book" mark in connection with its directory has been made notwithstanding Plaintiff's well-known and prior established rights in the trademark "Le Book" and with both actual and constructive notice of Plaintiff's federal registration rights under 15 U.S.C. § 1072.

118.    Upon information and belief, Defendant's infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Plaintiff's business, reputation and good will in its federally registered "Le Book" trademark. Plaintiff has no adequate remedy at law.

**AS AND FOR A THIRD CAUSE OF ACTION
FOR FALSE DESIGNATION OF ORIGIN
UNDER 15 U.S.C. § 1125(A)**

119.    Plaintiff repleads and realleges each and every allegation of paragraphs "1" through "118" inclusive, with the same force and effect as if specifically pleaded herein.

120.    Upon information and belief, Defendant has used the designation "Black Book" in connection with its product "The Black Book" in interstate commerce.  Said use of the designation "Black Book" is a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion and to cause mistake, and to deceive as to the affiliation, connection or association of Defendant with Plaintiff and as to the origin, sponsorship, or approval of Defendant's products and commercial activities by Plaintiff.

121.    Upon information and belief, Defendant's wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Plaintiff's business, reputation and good will in its "Le Book" mark. Plaintiff has no adequate remedy at law.


## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR IMPOUNDMENT AND INJUNCTIVE RELIEF

122.    Plaintiff repleads and realleges each and every allegation of paragraphs "1" through "121" inclusive, with the same force and effect as if specifically pleaded herein.

122.    By reason of Defendants' actions, Plaintiff has been and continues to be irreparably harmed by the infringement of the Copyrighted Work and the dissemination of the Infringing Work.

123.    As such, monetary damages may be insufficient.

124.    Plaintiff has no adequate remedy at law for such actionable copying and infringement.

125.    Plaintiff is likely to succeed on the merits.

126.    Accordingly, Plaintiff requests that this Court issue a preliminary injunction

pending a determination granting a final and permanent injunction to prevent any future

infringement of Plaintiff's valid registered copyright of the publication "Le Book" - New York

2003 pursuant to Rule 65 of the Federal Rules of Civil Procedure and 17 U.S.C. § 502.

127.    Plaintiff further requests that this Court issue an Order for the impounding of all

materials used in violation of the Plaintiff, copyright owner's exclusive rights pursuant to 17

U.S.C. §503 (a).


### AS AND FOR A FIFTH CAUSE OF ACTION
### FOR TRADEMARK DILUTION UNDER NEW YORK STATE LAW

128.    Plaintiff repleads and realleges each and every allegation of paragraphs "1"

through "127" inclusive, with the same force and effect as if specifically pleaded herein.

129.    Plaintiff's "Le Book" trademark constitutes a famous mark in the State of New

York, which mark became famous prior to the commencement of Defendant's activities as

alleged herein.

130.    Upon information and belief, Defendant's activities as alleged herein dilute the

distinctive quality of Plaintiff's "Le Book" mark.

131.    Upon information and belief, Defendant's wrongful activities have caused, and

unless enjoined by this Court will continue to cause, irreparable injury and other damage to

Plaintiff's business, reputation and good will in its "Le Book" mark. Plaintiff has no adequate

remedy at law.

### AS AND FOR A SIXTH CAUSE OF ACTION
### FOR COSTS AND ATTORNEYS' FEES

133.    Plaintiff repleads and realleges each and every allegation of paragraphs "1"

through "132" inclusive, with the same force and effect as if specifically pleaded herein.

134.    Pursuant to 17 U.S.C. § 505, this Court may allow the recovery of full costs and reasonable attorneys' fees in any civil action brought pursuant to the Copyright Act.

135.    Accordingly, Plaintiff requests that this Court award Plaintiff reasonable attorneys' fees and the costs of this action pursuant to 17 U.S.C. § 505.


WHEREFORE Plaintiff demands:

(1)    That a preliminary and permanent injunction issue restraining Defendants, their agents, servants, employees, successors and assigns and all others in concert and privity with them from using the name "Black Book" in connection with the offering of any compilation of directory, from infringement of U.S. Trademark Registration No. 74707010 from unfairly competing with Plaintiff, from engaging in unfair and deceptive trade practices and from injuring Plaintiff's business reputation and diluting its trademark rights, pursuant to Section 34 of the Lanham Act (15 U.S.C. § 1116), and the equitable power of this Court to enforce the common law of the State of New York.

(2)    Under the First Cause of Action, actual and statutory damages in an amount to be determined but not less than $500,000.00;

(3)    Under the Second Cause of Action, actual and statutory damages in an amount to be determined but not less than $500,000.00;

(4)    Under the Third Cause of Action, actual and statutory damages in an amount to be determined but not less than $500,000.00;

(5)    Under the Fourth Cause of Action, a final and permanent injunction to

prevent any future infringement of Plaintiff's valid registered copyright of the publication of "Le Book" - New York 2003;

(6)     Under the Fifth Cause of Action, actual and statutory damages in an amount to be determined but not less than $500,000.00;

(7)     Under the Sixth Cause of Action, that Defendant be compelled to pay Plaintiff's attorneys' fees, together with costs of this suit, pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117);

(8)     That an order be entered compelling Defendants BLACK BOOK PHOTOGRAPHY, INC. and DAG MEDIA, INC. to account for all gains, profits and advantages derived by Defendants by their infringement of Plaintiff's copyrights or such damages as to the court shall appear proper within the provisions of the copyright statutes;

(9)     That injunctive relief be granted preventing and restraining the infringement of Plaintiff's copyright by Ordering Defendants BLACK BOOK PHOTOGRAPHY, INC. and DAG MEDIA, INC. not to distribute, sell or in any way disseminate the copyrighted materials of Plaintiff;

(10)     Plaintiff prays for an Order pursuant to 17 U.S.C.A. §503 for the impounding of all materials used in the violation of Plaintiff, copyright owner's exclusive rights;

(11)     That judgment be entered against Defendants in favor of Plaintiff for such damages, costs, and expenses as Plaintiff has incurred in regard to this lawsuit; and

(12)     That Plaintiff be awarded such other and further relief as is just and

proper.


Dated: New York, New York
        December 28, 2004


                              DOWD & MAROTTA LLC

                              By Raymond P. Dowd (RD-7508)
                              Attorneys for Plaintiff
                              277 Broadway, Suite 1310
                              New York, NY 10007
                              Tel: (212) 349-1200

CORPORATE VERIFICATION

STATE OF NEW YORK            )
                            )ss.:
COUNTY OF NEW YORK          )

MICHAEL KAZAM, being duly sworn, deposes and says:

1.     I am Vice-President of LE BOOK PUBLISHING, INC., the Plaintiff in the above-

entitled action.

2.     I have read the annexed Complaint and know of the contents thereof and the same is

true to my knowledge, except those matters therein which are stated to be alleged on information and

belief, and as to those matters I believe them to be true.

Michael Kazam

Sworn to before me this

28th day of December, 2004

NOTARY PUBLIC

**DANIELA ALBA**
Notary Public, State of New York
No. 02AL6099147
Qualified in New York County
Commission Expires 9 / 22 / 20___