UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                                                :
LE BOOK PUBLISHING, INC.,                                       :
                                                                :
                            Plaintiff,                          :
                                                                :           04 Civ. 10270 (GEL)
              -v-                                                :
                                                                :       **OPINION AND ORDER**
BLACK BOOK PHOTOGRAPHY, INC.                                    :
and DAG MEDIA, INC.                                             :
                            Defendants.                         :
                                                                :
----------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/16/05

Daniela Alba, Dowd & Marotta LLC, New York, NY,
for plaintiff.

Mark Heinze, Ofeck & Heinze, LLP, New York, NY,
for defendants.

GERARD E. LYNCH, District Judge:

Plaintiff, Le Book Publishing, brings this copyright and trademark infringement action

against Black Book Photography, Inc. and Dag Media, Inc. Both plaintiff and defendants publish

directories targeted to the "creative industries," such as those in the business of fashion,

advertising, media and visual production. Plaintiff alleges that defendants copied its directory, in

violation of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and the Lanham Act, 15 U.S.C. §

1051 *et seq.* Plaintiff also brings a New York state claim for trademark dilution.[1] Defendants

have filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, arguing that the listings in plaintiff's directory are not copyrightable,

---

[1] Plaintiff also includes claims for "Impoundment and Injunctive Relief" (Am. Compl. ¶¶
190-96), and "Costs and Attorneys' Fees." (Am. Compl. ¶¶ 201-03.) These claims are not
substantive causes of action, but are forms of relief, and therefore are not proper claims.

and the directories published by plaintiff and defendants are blatantly dissimilar. For the reasons discussed below, defendants' motion will be granted.

## BACKGROUND

Plaintiff, Le Book Publishing, Inc., is the publisher of *Le Book - New York 2003* ("*Le Book NY*"), a directory for the fashion, advertising, and visual production industries. The reference guide contains 800 pages of listings of professional photographers, art directors, fashion stylists, hair stylists, make-up artists, model agencies, rental services, magazines, record labels, film and production companies, public relations firms, fashion designers, cosmetic companies, and advertising agencies. (Am. Compl. ¶¶ 13-14.) Plaintiff has published annual editions of its book in the United States for the past ten years, and was one of the first publications to combine photography and production elements in its guide. (Id. ¶ 14, 17.) The *Le Book NY* edition at issue here was first published in December 2002 (id. ¶ 21), and was registered with the United States Copyright Office on September 23, 2004. (Id. at ¶¶ 20-21.)

Defendants publish *The Black Book Creative Industry Directory 2004* ("*The Black Book Directory*"). *The Black Book Directory* was released in the spring of 2004. (Id. ¶ 100.) *The Black Book Directory* contains instances of direct copying from *Le Book NY*, such as the inclusion of "seed" names and addresses planted in plaintiff's directory for the purpose of discovering unauthorized copying. (Id. ¶¶ 23, 36.)

Plaintiff employs a staff of approximately five people who research, select, and collect vast amounts of information to be included in *Le Book NY*. (Id. ¶ 22.) Plaintiff contends that it has spent an inordinate amount of time, money and effort to compile its listings, acquire reliable contacts in the industry, and verify that the information is accurate. (Id. ¶ 22, 107.) Plaintiff

2

believes that defendants' "copying of [p]laintiff's thoroughly researched, carefully compiled listings is patently unfair" and subsequently brought forth this action. (Id. ¶ 106.)

## DISCUSSION

I.   Standard on Motion to Dismiss

For the purposes of this motion to dismiss, the facts as alleged in plaintiff's complaint must be taken as true. Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). All reasonable inferences must be drawn in the plaintiff's favor. Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004). At the same time, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995); Whyte v. Contemporary Guidance Servs., Inc., No. 03 Civ. 5544 (GBD), 2004 WL 1497560, at *3 (S.D.N.Y. July 2, 2004). This Court may only dismiss a complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002) (internal quotation marks omitted).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference. Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). Both directories, *Le Book NY* and *The Black Book Directory*, may be considered because they are referenced in the complaint and are crucial to plaintiff's claims. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (determining that documents were properly considered in a motion to dismiss as plaintiff had relied on the documents, and were integral to the complaint). Thus, the Court may consider the two directories in its analysis of the parties' arguments.

II.    Copyright Infringement

Plaintiff's basic claim is that defendants copied listings from *Le Book NY* and included them in *The Black Book Directory*. Plaintiff asserts that it hired a team of five individuals who researched, selected and collected a vast amount of information that were eventually included in *Le Book NY*. (Am. Compl. ¶ 22.) To detect any copying, *Le Book NY* contains several mock company names and addresses (referred to as "seeds"). These seed entries were then found listed in *The Black Book Directory*. While plaintiff has invested time, energy and money into collecting information appropriate for its directory, it is a basic principle of copyright law that facts cannot be copyrighted, no matter how much effort has been put into discovering and compiling these facts. See 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). The rationale behind this principle stems from the Constitution itself, which explains that the primary objective of copyright is "[t]o promote the Progress of Science and useful Arts," rather than reward the labor of authors. Feist Publ'ns, Inc. v. Rural Tel. Co., 499 U.S. 340, 349 (1991), quoting U.S. Const. Art. I, § 8, cl. 8. The key distinction is "one between creation and discovery: The first person to find and report a fact has not created the fact; he or she has merely discovered its existence." Feist Publ'ns, 499 U.S. at 347. To this day, the "originality requirement . . . remains the touchstone of copyright protection today." Id. Therefore, plaintiff's listings of various stylists, photographers, and agencies cannot be copyrighted as they are purely facts and not original creations.

Plaintiff also argues that its directory deserves copyright protection as a "factual compilation. Indeed, "[f]actual compilations . . . may possess the requisite originality" because the "compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by the readers." Id. at 348. Because the Supreme Court has specifically rejected the "sweat of the brow" or "industrious collection" theories, where copyright protection is a reward for the hard work that went into compiling the facts, id. at 353, any copyright in a factual compilation is "thin," and "only the compiler's selection and arrangement may be protected; the raw facts may be copied at will." Id. at 350.

The Copyright Act of 1976 defines a copyrightable compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. To qualify as a factual compilation, *Le Book NY* must include: "(1) the collection and assembly of pre-existing material, facts, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an 'original' work of authorship." Feist Publ'ns, 499 U.S. at 347. Plaintiff's directory clearly meets the first two requirements. First, *Le Book NY* is a collection of information about various individuals and companies serving the fashion and creative industry. Second, Plaintiff properly alleges that it selected and arranged the materials for inclusion into the directory, employing a detailed specific process by surveying existing clients, conducting internet research to check "hit rates" on websites, examining portfolios, and reviewing individuals' client lists. (Am. Compl. ¶¶ 120-126.) Plaintiff has alleged that it had to

5

select from a database of 35,000 of individuals and companies that would be of interest to its audience. (Am. Compl. ¶¶ 128-131.)

Plaintiff also satisfies the originality requirement of the third prong. The requirement of originality "is not particularly stringent," but it does exist. Feist Publ'ns, 499 U.S. at 358-59. The arrangement must "order[] or group[] . . . data into lists or categories that go beyond the mere mechanical grouping of data as such, for example, the alphabetical, chronological, or sequential listings of data." Key Publ'ns, Inc. v. Chinatown Today Publ'g Enter., Inc., 945 F.2d 509, 513 (2d Cir. 1991). While *Le Book NY's* listings within categories are arranged alphabetically, plaintiff does more than just alphabetically list all its entries in one lump. Instead, it has divided the listings into nine main categories: hair and make-up stylists; model agencies; photo production, location services, photo labs, and retouchers; rentals; events, luxury hotels; magazines; music & video; fashion; and advertising agencies. (See Am. Compl. ¶¶ 148-63.) See also Key Publ'ns, Inc., 945 F.2d at 514 (finding that the arrangement in a directory of Chinese-American businesses was sufficiently original, as it included categories such as "Bean Curd & Bean Sprout Shops" that were of particular interest to the Chinese-American community). This arrangement required sufficient thought and creativity necessary to meet the originality requirement. Plaintiff has met all three requirements of a factual compilation, and therefore, *Le Book NY* is entitled to copyright protection.

Nevertheless, plaintiff's claim fails because defendants have not infringed on plaintiff's copyright. To establish infringement, two elements must be shown: (1) possession of a valid copyright, and (2) "copying of those elements of the work that are copyrightable." Id. at 514. As the Second Circuit points out in Key Publications, whether a compilation has been infringed

6

"requires a somewhat more refined analysis than is applied in a case involving a wholly original work." Id. While the test for original works is one of "substantial similarity," when examining a factual compilation, a court must examine the "substantial similarly between those elements, and only those elements, that provide copyrightability." Id. In Key Publications, the court found that a telephone directory targeted to New York City's Chinese-American community did not infringe on a similar directory, despite blatant copying of certain listings, because the arrangement of the two directories were not "remotely similar," and only a small percentage of the defendants' categories overlapped with the plaintiff's categories. Id. at 515.

Here, plaintiff and defendants' directories are also arranged very differently. *Le Book NY* includes nine main categories, while *The Black Book Directory* contains ten. Plaintiff points out that *The Black Book Directory* contains some of the same categories as *Le Book NY*. (Am. Compl. ¶ 165.) For example, *Le Book NY* has a "Hair, Make-up Stylists" category, and *The Black Book Directory* has a "Stylists" grouping. However, some overlap is bound to happen when producing directories for a similar audience, and this does not automatically lead to a finding of infringement. See id. at 516 ("There are a finite number of businesses that are of special interest to a sizeable segment of [a particular community], and some substantial overlap among classified business directories compiled for that community is inevitable.").

A perusal of the listings under each book demonstrate that the compilations are arranged quite distinctly. *Le Book NY* includes some categories, such as "Fashion" and "Magazine" that *The Black Book Directory* does not have. While *Le Book NY* contains a broad category titled "Rentals," the parallel subcategories listed under "Rentals" are spread among several categories in *The Black Book Directory*, such as "Supplies & Equipment," "Props & Wardrobe," and

"Studios/Sound Stages/Locations." Similarly, listings under *Le Book NY's* "Photo Production, Location Services, Photo Labs, Retouchers," can be found in three categories in *The Black Book Directory*, specifically "Pre Press/ Photo Labs/ Agencies," "Production Co., & Location Services," and "Post Production."

In addition, some subcategories are placed in different groupings. For example, *Le Book NY* places "Animal Rentals" under the "Rentals" category, while *The Black Book Directory* has a subcategory titled "Animal Casting" under "Casting/Model/Talent Agencies." Last, each directory has sets of listings that do not exist in the other. For example, *Le Book NY* contains subcategories "Wigs," "Plant Rentals," Luxury Accessories," "Perfume & Cosmetic Companies," "Luxury and Boutique Hotels," and "Fashion TV," that *Black Book NY* does not have. Similarly, *The Black Book Directory* contains subcategories that do not exist in *Le Book NY*, such as "Ocean & Marine Equipment," "Art Supplies," "FX Props/ Special FX," "Animatronics & Mechanical FX," "Ice," "DVD Authoring & Replications," "Animation, Computer Graphics, & Visual FX," "Film & Tape Storage," and "CD Duplication," among others.

The arrangement of the listings demonstrate that the "organizing principles of the two directories are thus not substantially similar." Key Publ'ns, 945 F.2d at 516. A consumer looking at the two directories would perceive the difference when perusing the table of contents of the two directories. Therefore, defendants' motion to dismiss is granted on plaintiff's copyright infringement claim.

8

III.    Trademark Infringement

Plaintiff brings a claim of trademark infringement, alleging that defendants' directory is confusingly similar to *Le Book NY* and that defendants' mark infringes on plaintiff's registered trademark. To prevail on a trademark infringement claim, plaintiff must prove that its mark is a protectable trademark and that defendants' use of the mark is likely to confuse consumers as to the source or sponsorship of plaintiff's product. Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000).[2]

In assessing the likelihood of confusion, courts must examine the eight factors set forth in Polaroid Corp. v. Polarad Elec. Corp., 287 F.2d 492 (2d Cir. 1961), which include: (i) the strength of plaintiff's mark; (ii) the similarity of the parties' marks; (iii) the proximity of the parties' products in the marketplace; (iv) the likelihood that the plaintiff will bridge the gap between the products; (v) actual confusion; (vi) the defendant's intent in adopting its mark; (vii) the quality of the defendant's product; and (viii) the sophistication of the relevant consumer group. Id. at 495. The "evaluation of the Polaroid factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577, 584 (2d Cir. 1993) (internal quotation marks and citation omitted).

---

[2] Defendants argue that plaintiff is not the actual registrant of the trademark because the registration is in the name of Le Book Editions, a French corporation located in Paris. (D. Mem. 6-7.) However, the Court need not determine the validity of the trademark registration at this time because defendants concede (for purposes of this motion only) that plaintiff has a valid trademark. (D. Reply 11.)

The "degree of similarity" element here overwhelms any possibility of confusion. In Nabisco, the marks for Dentyne Ice and Icebreakers, brands of chewing gum, were found to be so different as to "create[] distinct marketplace impressions," and thus as a matter of law to create no likelihood of confusion, because each mark utilized different typefaces and different styles, and the chewing gum packaging and shapes were also easily distinguishable. Similarly, plaintiff and defendants here have obviously dissimilar marks. Plaintiff's mark is a black square with white letters, with "LE" horizontally resting on the bottom, and "BOOK" turned 90 degrees, running along the right edge of the square. Defendants' mark has a graphic of a book at the top, and then the words:

> THE
> BLACK
> BOOK

are placed underneath the graphic, with each word on a separate line (as above). As with the gum packets in Nabisco, the directories here are also physically and visually distinct. *Le Book NY* is a square shape with big spiral binding and a clear acrylic plastic cover. *The Black Book Directory* is a traditionally bound book, rectangular in shape. The books' formats, typefacing, paper, and even the placement of advertising are all noticeably dissimilar.

The only word in common in the marks is "Book," which is an unregistrable component of the mark. The word "book" is a generic term and cannot be registered as a trademark. See Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976) ("[N]o matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name."). In fact,

defendants note that the registrant of the "Le Book" mark includes a disclaimer for the word "book" from trademark protection, pursuant to 15 U.S.C. § 1056(a). The cumulative effects of the dissimilarity of the marks and the form, look and feel of the directories dispels any confusion consumers might have. Therefore, plaintiff's claim for trademark infringement fails as a matter of law.

IV.     False Designation of Origin and Repackaging Claims under the Lanham Act

Plaintiff brings a claim for false designation of origin, pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The purpose of § 1125(a) "is to prevent consumer confusion regarding a product's source . . . and to enable those that fashion a product to differentiate it from others on the market." Centaur Communications v. A/S/M Communications, Inc., 830 F.2d 1217, 1220 (2d Cir. 1987). A false designation of origin claim can either be an allegation of passing off (also known as "palming off"), where the producer misrepresents its goods or services as someone else's, or "reverse passing off," when the producer misrepresents someone else's goods as its own. Daster v. Twentieth Century Fox, 539 U.S. 23, 28 n.1 (2003).[3]

A plaintiff bringing a false designation of origin claim must demonstrate that the defendants:

> on or in connection with any goods . . . use[d] in commerce . . . any
> false designation of origin . . . which . . .is likely to cause
> confusion, or to cause mistake, or to deceive as to the affiliation,

---

[3] Plaintiff brings a false designation of origin claim and a separate claim of repackaging under the Lanham Act. A repackaging claim is the same as "reverse passing off," which stems from a broadened interpretation of a false designation of origin claim. See Dastar, 539 U.S. at 30 ("The Trademark Law Revision Act of 1988 made clear that § 43(a) [of the Lanham Act] covers origin of production as well as geographic origin . . . [and] [i]ts language is amply inclusive . . . of reverse passing off.").

11

> connection, or association of such person with another person, or
> as to the origin, sponsorship, or approval of his or her goods,
> services, or commercial activities by another person . . . . 15
> U.S.C. § 1125(a).

The test used for false designation of origin utilizes the same principles and standards as are used for trademark infringement. See Bi-Rite Enters., Inc. v. Button Master, 555 F. Supp. 1188, 1192-93 (S.D.N.Y. 1983), quoting New West Corp. v. NYM Co. of Cal., Inc., 595 F.2d 1194, 1201 (9th Cir.1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical."). As discussed above, however, as a matter of law, *Le Book NY* and *The Black Book Directory* are so dissimilar that it is unlikely that a consumer would confuse one with the other, or mistakenly believe that both directories were published by either the plaintiff or defendant. Therefore, plaintiff fails to state a claim for false designation of origin and repackaging.

V.    Trademark Dilution

Plaintiff asserts a claim of trademark dilution under New York state law. Trademark dilution statues protect the ability of a plaintiff's mark to serve as a "unique identifier" if it is weakened because the "relevant public now associates that designation with a new and different source." The Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 965-66 (2d Cir. 1996). Defendants argue that plaintiff's New York state law claim for trademark dilution is foreclosed by the Federal Trademark Act, 15 U.S.C. § 1125(c)(3), which provides:

> The ownership by a person of a valid registration . . . or on the
> principal register shall be a complete bar to an action against that
> person, with respect to that mark, that is brought by another person
> under the common law or a statute of a State and that seeks to
> prevent dilution of the distinctiveness of a mark, label, or form of
> advertisement.

12

While a serious question of preemption is raised, the Court is wary of deciding a question of federalism which has not been fully briefed. One district court cited some legislative history indicating that the Federal Trademark Dilution Act enacted in 1995 was not intended to pre-empt existing state dilution statutes. See Ringling Brothers-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp., 937 F. Supp. 204, 208-09 (S.D.N.Y. 1996), citing H.R. Rep. No. 104-374, at 4 (1995), reprinted in 1996 U.S.S.C.A.N. 1029, 1031 ("[T]he Act was not intended to 'pre-empt existing state dilution statutes . . . . [A] federal dilution statute should . . . coexist with state dilution law.'"). Moreover, in Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168 (2d Cir. 2000), the Second Circuit analyzed plaintiff's trademark dilution claims under both the Federal Trademark Act and New York state law. Id. at 174-75.

Nonetheless, defendants' motion to dismiss on plaintiff's trademark dilution claim must be granted for other reasons. In order to establish a dilution claim, two elements must be shown: (1) ownership of a distinctive mark; and (2) a likelihood of dilution. Hormel Foods Corp. v. Jim Henson Prod., Inc., 73 F.3d 497, 506 (2d Cir. 1996). In "keeping with the original intent of the [New York] statute, the similarity [between the marks] must be substantial before the doctrine of dilution may be applied. Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1029 (2d Cir. 1989). See also Fed. Express Corp., 201 F.3d at 176 ("The marks must be of sufficient similarity so that, in the mind of the consumer, the junior mark will conjure an association with the senior [mark, therefore] lessen[ing] the distinctiveness of the senior mark.") (internal citations omitted). As discussed above, the parties' marks and directories are blatantly different, and thus plaintiff fails to meet a critical requirement of a dilution claim.

Plaintiff alleges that *The Black Book Directory* "is a cheap imitation of [p]laintiff's [c]opyrighted work. The advertisements included in [*The Black Book Director*] are of inferior quality, and the directory itself is cheaply made with lower-grade resources. (Am. Compl. ¶ 30.) The type of dilution claim plaintiff appears to be bringing is for "tarnishment," when a trademark is "linked to product of shoddy quality, or is portrayed in an unwholesome or unsavory context," Deere & Co. v. MTD Products, Inc., 41 F.3d 39, 43 (2d Cir. 1994), so that "plaintiff's mark will suffer negative associations through defendant's use." Hormel, 73 F.3d at 507. However, defendant has not used plaintiff's mark. When a consumer looks at two different travel guidebooks, such as the Lonely Planet and the Rough Guide, describing the same location, she understands that the books are products of two different publishers, and does not think less of the Lonely Planet because the Rough Guide uses recycled paper. Similarly, a consumer looking at *Le Book NY* and/or *The Black Book Directory* will no doubt understand that they are two different publications, and will not think less of *Le Book NY* based on the presentation of *The Black Book Directory*. Thus, plaintiff fails to meet the similarity requirement for a dilution claim.

## CONCLUSION

Defendants' motion to dismiss is granted on all of plaintiff's claims.


SO ORDERED.

Dated:     New York, New York
           August 15, 2005

                                        _____
                                        GERARD E. LYNCH
                                        United States District Judge

14